Updated January 3, 2023

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| v. | Case No. 22-cr-125-JMC |
| **ERIC GERWATOWSKI** | |
| **Defendant.** | |

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter. For the reasons set forth herein, the government requests that this Court sentence Eric Gerwatowski to 3 months' incarceration, in the middle of the applicable sentencing range, 36 months of supervised release, $2000 in restitution, and a mandatory assessment of $100.

## INTRODUCTION

Gerwatowski participated in the January 6, 2021 attack on the United States Capitol—a violent attack that forced an interruption of the certification of the 2020 Electoral College vote count, threatened the peaceful transfer of power after the 2020 Presidential election, injured more than one hundred police officers, and resulted in more than 2.8 million dollars in losses.[1]

---

[1] As of October 17, 2022, the approximate losses suffered as a result of the siege at the United States Capitol was $2,881,360.20. That amount reflects, among other things, damage to the United States Capitol building and grounds and certain costs borne by the United States Capitol Police.

Updated January 3, 2023

Gerwatowski, a 32-year-old self-employed engineer/music producer from New York, helped create the chaos that occurred on January 6, 2021, by pulling open a door which had just been shut by Capitol Police and calling for other rioters to enter the building through the now-opened door.

The government recommends that the Court sentence Gerwatowski to 3 months' incarceration, which is within the advisory Guidelines' range of 0 to 6 months, which the government submits is the correct Guidelines calculation. A 3-month sentence reflects the gravity of Gerwatowski's conduct.

## I.     FACTUAL BACKGROUND

### A.     The January 6, 2021 Attack on the Capitol

The government refers to the court to the stipulated Statement of Offense filed in this case, ECF 25, for a short summary of the January 6, 2021 attack on the United States Capitol by hundreds of rioters, in an effort to disrupt the peaceful transfer of power after the November 3, 2020 presidential election.

### B.     Gerwatowski's Role in the January 6, 2021 Attack on the Capitol

Gerwatowski traveled from New York to Washington, D.C. to attend the rally. On January 6, 2021, Gerwatowski made his way to the Upper House Doors, located where he joined the front of the crowd there. See Diagram 1 indicating the Upper House Door location with a red star.

Updated January 3, 2023



*Diagram 1*

Rioters had already breached the U.S. Capitol building at this time. Capitol Police officers were attempting to close the Upper House Doors to secure the building and prevent further rioters from breaching the building.

At approximately 2:49 p.m., Gerwatowski, who was just outside the Upper House Doors, pulled open one of the doors the Capitol Police had just closed (Exhibit 1[2]). Officers were standing directly inside and in plain sight to Gerwatowski and others.

---

[2] Exhibit 1 is a You Tube from "Benjamin Reports" entitled "Trump Supporters, Capitol building in DC, woman shot and killed."

Updated January 3, 2023



*Figure 1: Screenshot from Exhibit 1 at 0:22*

Once Gerwatowski had pulled the door open, he turned to the crowd and yelled, "Let's Go!" and directed more rioters inside the Capitol as indicated below. Gerwatowski's actions directly led to over a dozen addition rioters entered the building.



*Figure 2: Screenshot from Exhibit 1 at 0:31*

Gerwatowski then entered the building as captured by CCTV provided as Exhibit 2.

Updated January 3, 2023



*Figure 3*

Once inside, Gerwatowski walked down the corridor, attempting to get further into the Capitol.



*Figure 4*

He continued until his progress was blocked by a bottleneck of rioters. While inside, Gerwatowski told another rioter, "They're raping kids and they're shooting kids." See Exhibit 1 at 1:28. As captured by surveillance video, he appeared to be blocked by other rioters inside who were being escorted out. He then turned around and exited the U.S. Capitol building through the

5

Updated January 3, 2023

same doors.  In total, Gerwatowski was inside the Capitol for approximately two minutes.

Gerwatowski was interviewed outside the Capitol building. When the interviewer asked him why he entered the U.S. Capitol building, Gerwatowski responded that "the commies are trying to steal the country" and he believed the election was stolen.  See Exhibit 2.



*Figure 5: Screenshot from Exhibit 2 at 0:05.*

## II.     THE CHARGES AND PLEA AGREEMENT

On February 2, 2022, Gerwatowski was charged by complaint for his actions on January 6, 2021.  He was later indicted, on April 13, 2022, for violating 18 U.S.C. § 231(a)(3) (Civil Disorder), 18 U.S.C § § 1752(a)(1) and (2) (Entering and Remaining and Disorderly and Disruptive conduct in a Restricted Building or Grounds) and 40 U.S.C. §§ (disorderly Conduct and Parading, Demonstrating, or Picketing in a Capitol Building). On November 22, 2022, Gerwatowski pleaded guilty to the 18 U.S.C. § 231 count pursuant to a plea agreement.

## III.    STATUTORY PENALTIES

Gerwatowski now faces sentencing on one count of Civil Disorder, in violation of 18

Updated January 3, 2023

U.S.C. § 231. As noted by the plea agreement and the Presentence Report issued by the U.S. Probation Office, the defendant faces up to 5 years of imprisonment; a fine of $250,000, not more than one year of supervised release, and a mandatory special assessment of $100.

## IV.     THE SENTENCING GUIDELINES AND GUIDELINES ANALYSIS

As the Supreme Court has instructed, the Court "should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *United States v. Gall*, 552 U.S. 38, 49 (2007). In the plea agreement, the parties agree to the following Sentencing Guidelines calculations:

| | | |
|---|---|---|
| U.S.S.G. § 2A2.4 | Base Offense Level | 10 |
| | Total | 10 |

*See* Plea Agreement at ¶¶ 4(A).   The U.S. Probation Office's calculation is the same.

The U.S. Probation Office calculated the defendant's criminal history as category I, which is not disputed. PSR ¶ 38. Accordingly, based on the government's calculation of the defendant's total adjusted offense level, after acceptance of responsibility, at 8, Gerwatowski's Guidelines imprisonment range is 0 to 6 months of imprisonment. The defendant's plea agreement contains an agreed-upon Guidelines range calculation that mirrors the calculation contained herein.

## V.     SENTENCING FACTORS UNDER 18 U.S.C. § 3553(A)

In this case, sentencing is guided by 18 U.S.C. § 3553(a). As described below, on balance, the Section 3553(a) factors weigh in favor of a term of incarceration.

### A.     Nature and Circumstances of the Offense

As shown in Section II(B) of this memorandum, Gerwatowski's felonious conduct on

January 6, 2021 was part of a massive riot that almost succeeded in preventing the certification vote from being carried out, frustrating the peaceful transition of Presidential power, and throwing the United States into a Constitutional crisis. The nature and circumstances of Gerwatowski's offense were of the utmost seriousness, and fully support the government's recommended sentence of 3 months' incarceration and 36 months of supervised release.

### B. The History and Characteristics of the Defendant

The defendant indicated in the presentence report that he had a chaotic and troubled home life growing up, with limited supervision, instances of domestic violence, and parents who passed away from medical ailments. It may have led him to early use of alcohol and marijuana in his teens. To his credit, he did graduate from high school and did attend some community college in New York and now claims to work as a self-employed multimedia engineer/music producer since October 2016. However, that only makes his actions on January 6, 2021 more troublesome as he has jeopardized his future in doing so.

While defendant has no criminal history, his criminal acts on January 6 weigh in favor of incarceration.

### C. The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

As with the nature and circumstances of the offense, this factor supports a sentence of incarceration. Gerwatowski's criminal conduct, preventing officers from securing the building by forcing open the Upper House Doors, thereby allowing and encouraging additional rioters to enter the U.S. Capitol building, was the epitome of disrespect for the law.

Updated January 3, 2023

### D. The Need for the Sentence to Afford Adequate Deterrence

*General Deterrence*

A significant sentence is needed "to afford adequate deterrence to criminal conduct" by others. 18 U.S.C.§ 3553(a)(2)(B). The need to deter others is especially strong in cases involving domestic terrorism, which the breach of the Capitol certainly was.[3] The demands of general deterrence weigh strongly in favor of incarceration, as they will for nearly every case arising out of the violent riot at the Capitol.

*Specific Deterrence*

The need for the sentence to provide specific deterrence to this particular defendant also weighs heavily in favor of a lengthy term of incarceration.

Although the defendant has a criminal history category of I, his actions and rhetoric on January 6, 2021, was aggressive meant to incite others.   He can be seen in videos screaming obscenities at USCP officers maintaining the Capitol door then ranting irrationally about politicians inside the building and to media outside to further the chaos already occurring.  Such behavior could be triggered again, if he is not held accountable for his actions and supervised properly.  Moreover, Gerwatowski has not fully expressed remorse, contrition, or recognition of or for his actions. This Court's sentence should convey to Gerwatowski that his actions were dangerous and irresponsible and must not be repeated.

---

[3] *See* 18 U.S.C. § 2331(5) (defining "domestic terrorism").

Updated January 3, 2023

### E. The Importance of the Guidelines

"The Guidelines as written reflect the fact that the Sentencing Commission examined tens of thousands of sentences and worked with the help of many others in the law enforcement community over a long period of time in an effort to fulfill [its] statutory mandate." *Rita v. United States*, 551 U.S. 338, 349 (2007). As required by Congress, the Commission has "'modif[ied] and adjust[ed] past practice in the interests of greater rationality, avoiding inconsistency, complying with congressional instructions, and the like.'" *Kimbrough v. United States*, 552 U.S. 85, 96 (2007) (quoting *Rita*, 551 U.S. at 349); 28 U.S.C. § 994(m). In so doing, the Commission "has the capacity courts lack to base its determinations on empirical data and national experience, guided by professional staff with appropriate expertise," and "to formulate and constantly refine national sentencing standards." *Kimbrough*, 552 U.S. at 108 (cleaned up). Accordingly, courts must give "respectful consideration to the Guidelines." *Id.* at 101.

### F. Unwarranted Sentencing Disparities

Section 3553(a)(6) of Title 18 directs a sentencing court to "consider … the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." So long as the sentencing court "correctly calculate[s] and carefully review[s] the Guidelines range, [it] necessarily [gives] significant weight and consideration to the need to avoid unwarranted disparities" because "avoidance of unwarranted disparities was clearly considered by the Sentencing Commission when setting the Guidelines ranges." *Gall v. United States*, 552 U.S. 38, 54 (2007). In short, "the Sentencing Guidelines are themselves an anti-disparity formula." *United States v. Blagojevich*, 854 F.3d 918, 921 (7th Cir. 2017); *accord* United

10

Updated January 3, 2023

States v. Sanchez, 989 F.3d 523, 540 (7th Cir. 2021). Consequently, a sentence within the Guidelines range will ordinarily not result in an unwarranted disparity. *See United States v. Smocks*, D.D.C. 21-cr-198 (TSC), Sent. Hrg. Tr. at 49 ("as far as disparity goes, … I am being asked to give a sentence well within the guideline range, and I intend to give a sentence within the guideline range.") (statement of Judge Chutkan).

Moreover, Section 3553(a)(6) does not limit the sentencing court's broad discretion "to impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing. 18 U.S.C. § 3553(a). After all, the goal of minimizing unwarranted sentencing disparities in Section 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The "open-ended" nature of the Section 3553(a) factors means that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence differently—differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id*. at 1095. "As the qualifier 'unwarranted' reflects, this provision leaves plenty of room for differences in sentences when warranted under the circumstances." *United States v. Brown*, 732 F.3d 781, 788 (7th Cir. 2013).[4]

---

[4] If anything, the Guidelines ranges in Capitol siege cases are more likely to understate than

Updated January 3, 2023

In cases for which the Sentencing Guidelines apply, "[t]he best way to curtail 'unwarranted' disparities is to follow the Guidelines, which are designed to treat similar offenses and offenders similarly." *United States v. Bartlett*, 567 F.3d 901, 908 (7th Cir. 2009). *See id*. ("A sentence within a Guideline range 'necessarily' complies with § 3553(a)(6).").[5]

Although all the other defendants discussed below participated in the Capitol breach on January 6, 2021, and were convicted of violating 18 U.S.C. § 231(a)(3), many salient differences explain the differing recommendations and sentences. While no previously sentenced case contains the same balance of aggravating and mitigating factors present here, the sentences in the following cases provide suitable comparisons to the relevant sentencing considerations in this case.

In *United States v. Christian Cortez*, 21-cr-317-TSC, Cortez traveled to D.C. and entered the U.S. Capitol building through the Parliamentarian door. Defendant traveled through the building until officers stopped him. He exited after about 13 minutes. Cortez then joined a crowd in front of the North door that was attempting to break the Capitol doors down while officers attempted to seal them. Cortez swore at officers, called them oath breakers, slammed a flag down and stepped in front of the doors. He did not move after being sprayed with chemicals. Based

---

overstate the severity of the offense conduct. *See United States v. Knutson*, D.D.C. 22-cr-31 (FYP), Aug. 26, 2022 Sent. Hrg. Tr. at 24-25 ("If anything, the guideline range underrepresents the seriousness of [the defendant's] conduct because it does not consider the context of the mob violence that took place on January 6th of 2021.") (statement of Judge Pan).

[5] A routinely updated table providing additional information about the sentences imposed on other Capitol breach defendants is available here: https://www.justice.gov/usao-dc/capitol-breach-cases. To reveal that table, click on the link "SEE SENTENCES HANDED DOWN IN CAPITOL BREACH CASES." The table shows that imposition of the government's recommended sentence in this case would not result in an unwarranted sentencing disparity.

Updated January 3, 2023

on a range of 0-6 months, the Court sentenced Cortez to 4 months of incarceration and 36 months of supervised release.

In *United States v. Moises Romero, 21-cr-677-TSC,* Romero, wearing a gas mask, arrived at the Senate Wing Door where USCP officers had managed to temporarily stopped rioters from entering the building. Along with other rioters, he forced his way into the Capitol by pushing a barrier out of the way and into defendant officers, allowing them to move into the doorway and into the building. The pushed against officers with Romero bracing himself against the wall with his hand for leverage and eventually broke through the police line. Once inside, Romero turned the camera on himself and celebrated, shouting, "We in this motherfucker!" He walked through the Capitol, including the Crypt and Senator Merkley's office, before exiting the building after about 15 minutes. Based on a range of 8-14 months that included an adjustment for an offense involving physical contact, the court sentenced Romero to 12 months and one day of incarceration and 12 months of supervised release.

In *United States v. Derek Evans*, 21-cr-337-RCL, Evans live streamed the mob on Facebook while expressing enthusiasm about the riot. He walked through the Rotunda and Statuary Hall. Evans made statements in his livestream that the "Patriots" at the Capitol were taking a stand against stolen elections. He attempted to delete some of this evidence. Based on a sentencing range of 0-6 months, the Court sentenced Evans to 3 months of incarceration and 36 months of supervised release.

13

Updated January 3, 2023

## VI.  RESTITUTION

The Victim and Witness Protection Act of 1982 ("VWPA"), Pub. L. No. 97-291 § 3579, 96 Stat. 1248 (now codified at 18 U.S.C. § 3663), "provides federal courts with discretionary authority to order restitution to victims of most federal crimes."[6] *United States v. Papagno*, 639 F.3d 1093, 1096 (D.C. Cir. 2011). Generally, restitution under the VWPA must "be tied to the loss caused by the offense of conviction," *Hughey v. United States*, 495 U.S. 411, 418 (1990); identify a specific victim who is "directly and proximately harmed as a result of" the offense of conviction, 18 U.S.C. § 3663(a)(2); and is applied to costs such as the expenses associated with recovering from bodily injury, 18 U.S.C. § 3663(b). At the same time, the VWPA also authorizes a court to impose restitution "in any criminal case to the extent agreed to by the parties in a plea agreement." *See* 18 U.S.C. § 3663(a)(3). *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008).

Those principles have straightforward application here. The parties agreed, as permitted under 18 U.S.C. § 3663(a)(3), that Gerwatowski must pay $2,000 in restitution to the Architect of the Capitol, which reflects in part the role Gerwatowski played in the riot on January 6.[7] Plea Agreement at ¶ 14. As the plea agreement reflects, the riot at the United States Capitol had caused "approximately $2,734,748.14" in damages, a figure based on loss estimates supplied by the

---

[6] The Mandatory Victims Restitution Act, Pub. L. No. 104-132 § 204, 110 Stat. 1214 (codified at 18 U.S.C. § 3663A), which "requires restitution in certain federal cases involving a subset of the crimes covered" in the VWPA, *Papagno*, 639 F.3d at 1096, does not apply here. *See* 18 U.S.C. § 3663A(c)(1).

[7] Unlike under the Sentencing Guidelines for which (as noted above) the government does not qualify as a victim, *see* U.S.S.G. § 3A1.2 cmt. n.1, the government or a governmental entity can be a "victim" for purposes of the VWPA. *See United States v. Emor*, 850 F. Supp.2d 176, 204 n.9 (D.D.C. 2012) (citations omitted).

14

Updated January 3, 2023

Architect of the Capitol in mid-May 2021. *Id.*   Gerwatowski's restitution payment must be made to the Clerk of the Court, who will forward the payment to the Architect of the Capitol. See PSR ¶ 96.

## VII.    CONCLUSION

For the reasons set forth above, the government recommends that the Court impose a sentence of 3 months of incarceration, 36 months of supervised release, $2000 in restitution, and a mandatory assessment of $100.

                                      Respectfully submitted,

                                      MATTHEW M. GRAVES
                                    UNITED STATES ATTORNEY

By:   */s/ Joseph H. Huynh*
        JOSEPH H. HUYNH
        D.C. Bar No. 495403
        Assistant United States Attorney (Detailed)
        405 East 8th Avenue, Suite 2400
        Eugene, Oregon 97401-2708
        Telephone: (541) 465-6771
        Joseph.Huynh@usdoj.gov